# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KELLY CARTWRIGHT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 10-cv-1691 |
| ) | |
| DAN COONEY, ) | Judge Robert M. Dow, Jr. |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's motion [17] to dismiss Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(4), 12(b)(5), and 12(b)6) and for sanctions pursuant to Rule 11(c). For the reasons below, Defendant's motion is granted in part and denied in part.

## I.   Background[1]

A French restauranteur named Jean-Denis Courtin and a spirits specialist named Christine Cooney became business partners in Top Shelf Imports, LLC. Top Shelf Imports sought to manufacture, produce, and distribute Qino One Vodka, a vodka made from the Andean quasicereal quinoa. A business dispute between Mr. Courtin and Ms. Cooney arose in 2008, and Mr. Courtin filed a lawsuit against Christine Cooney and her husband, Daniel Cooney ("Defendant") ("the Courtin-Cooney litigation"). From August 2008, when the case was filed, until September 2009, when it settled, attorney Kelly Cartwright ("Plaintiff") represented Mr.

---

[1] For purposes of Defendant's motion to dismiss, the Court assumes as true all well-pleaded allegations that are set forth in Plaintiff's amended complaint. See, *e.g., Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

Courtin and Top Shelf Imports. Defendant and his wife were represented by various attorneys from August 2008 to March 2009, after which they litigated the case *pro se*.

On January 22, 2009, the *Chicago Reader* ("the *Reader*") published an article entitled "Seeds of Change" ("the article") about the genesis of Jean-Denis Courtin's vodka business venture. The article appeared on the *Reader*'s website, and a space in which readers could write and publish comments was provided directly below the article.

On February 16, 2009, Defendant published a comment ("the February 16 comment") to the article in which he stated that he was an owner of Qino One Vodka. Defendant wrote that he had filed claims against Courtin for fraud, breach of contract, and unjust enrichment, and described at length the allegations underlying those claims. The February 16 comment's sole (presumed) reference to Plaintiff was that Courtin "conn[ed] a young socially-conscious freelance attorney into bleeding his [Courtin's] business partner [*i.e.*, Christine Cooney] further, via endless, costly legal delays and ongoing Federal Court litigation." [1-2, at 4.]

On March 10, 2009, Plaintiff published a comment to the *Reader* article on the *Reader*'s website ("Plaintiff's March 10 comment") that responded to Defendant's February 16 comment. Plaintiff wrote that she represented Courtin, disputed the allegations in Defendant's comment, and accused Defendant of acting "with malicious intent to cause harm to Mr. Courtin's reputation and business ventures in a desperate attempt to persuade Mr. Courtin to drop his lawsuit against Cooney." [1-2, at 4.] Plaintiff's comment also stated that "Mr. Courtin has amended his federal lawsuit to address this most recent tortious conduct advanced by [Defendant]" by adding a defamation claim to Courtin-Cooney litigation. [1-2, at 4.]

On March 16, 2009, Defendant published a responsive comment ("the March 16 comment"), in which he wrote:

> I am glad to see Ms. Kelly Cartwright has decided to join the conversation  After all, she has played such a major role in advancing Mr. Courtin's fraud scheme; one might even say (metaphorically?), 'they are partners in crime.'  After six months of avoiding a meaningful conversation with me, my wife, our attorneys, or the court Ms. Cartwright finally returned my call last week, apparently believing she had something on us. * * * During my conversation with Kelly, I presented factual examples that showed her client had knowingly planned a get-rich-quick scam that involved selling American consumers a product that does not exist.  She reacted as if she was hearing it for the first time.  I am not at all sure her reaction was genuine as I find it difficult to believe anyone could be that ignorant of the facts while being such an integral part of the scam.  While Ms. Cartwright claims Mr. Courtin does not have any money, it appears she has been working as his mercenary legal attack dog for over nine months.  She must certainly believe there is something big waiting for her at the end of the rainbow if she can succeed in neutralizing us, the main obstacle to the scam.  When I asked her if it wasn't important to know if her client was telling the truth before wasting so many people's time, her response was, 'the truth is irrelevant in this case.'

[1-2, at 5-6.]  The March 16 comment then recited numerous allegations regarding Mr. Courtin before closing on a final note about Plaintiff:

> Mr. Courtin hired Kelly Cartwright to intimidate us * * *.  While I respect Ms. Kelly Cartwright's freedom to practice being a lawyer, I resent the fact that she has displayed such little regard for the truth and for the destructive effects caused by her lack of due diligence.  I hope that when the honorable Judge Bucklo finally rules on this case, she will weigh in on the significantly influential role Ms. Cartwright has played in manipulating and prolonging the effects of Mr. Courtin's fraudulent, malicious and destructive actions.

[1-2, at 6.][2]

In addition to the February 16 and March 16 comments, Plaintiff alleges that Defendant filed a complaint concerning Plaintiff with the Illinois Attorney Registration and Disciplinary Committee ("ARDC") in which he falsely stated that Plaintiff had engaged in criminal activity in representing Mr. Courtin.  Plaintiff alleges that the ARDC complaint was dismissed without a

---

[2]  The comment section of the webpage for the *Reader* article included a link entitled "Flag as inappropriate" after each posted reader comment.  It does not appear from the copy of the article and comments that Plaintiff attached to her complaint that either Defendant's comments or Plaintiff's comment were ever flagged as inappropriate.

3

hearing. Finally, Plaintiff alleges that Defendant submitted an "*ex parte* settlement status memo" to Judge Bucklo – the presiding judge in the Courtin-Cooney litigation – in which he accused Plaintiff of making misrepresentations during settlement negotiations, stating falsehoods to the U.S. Patent and Trademark Office in seeking a patent for the quinoa vodka formulation, and representing Mr. Courtin despite having a conflict of interest.

The Courtin-Cooney litigation ultimately settled. Plaintiff filed the operative complaint in this case on March 16, 2010. Plaintiff asserts claims of defamation *per se* (Count I); tortious interference with contractual relations (Count II); and intentional infliction of emotional distress (Count III).

## II.   Analysis

Defendant argues that Plaintiff's complaint should be dismissed under Rules 12(b)(1), 12(b)(2), 12(b)(4), 12(b)(5), and 12(b)(6). In addition, Defendant moves for sanctions under Rule 11(c). The Court addresses the various arguments in turn.

### A.   Subject Matter Jurisdiction

Defendant first contends that this Court does not have subject matter jurisdiction, and thus Plaintiff's case must be dismissed under Rule 12(b)(1). Federal courts are courts of limited jurisdiction; "they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Transit Express, Inc. v. Ettinger,* 246 F.3d 1018, 1023 (7th Cir. 2001) (internal quotation marks and citations omitted). Congress has provided that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between – (1) citizens of different states * * *." 28 U.S.C. § 1332(a). The plaintiff has the burden of establishing jurisdiction. *Transit Express*, 246 F.3d at 1023. In evaluating a motion

brought pursuant to Rule 12(b)(1), the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff. *Long v. Shorebank Dev. Corp.,* 182 F.3d 548, 554 (7th Cir. 1999).

Here, Plaintiff alleges that she is a citizen of Illinois and that Defendant is a citizen of Massachusetts. Accepting these allegations as true, Plaintiff has satisfied the diversity-of-citizenship requirement of § 1332(a)(1). In addition, Plaintiff seeks more than $750,000 in damages. Plaintiff thus satisfies the statutory amount-in-controversy. See 28 U.S.C. § 1332(a); see also *Rexford Rand Corp. v. Ancel*, 58 F.3d 1215, (7th Cir. 1995) ("courts will accept the plaintiff's good faith allegation of the amount in controversy unless it appears to a legal certainty that the claim is really for less than the jurisdictional amount" (internal citation and quotation marks omitted)). As Plaintiff has adequately pleaded the § 1332(a) requirements, the Court concludes that it has subject matter jurisdiction over the case.

### B. Personal Jurisdiction

Second, Defendant contends that the Court does not have personal jurisdiction over Defendant, and thus Plaintiff's complaint should be dismissed under Rule 12(b)(2). When personal jurisdiction over a defendant is challenged by way of a motion to dismiss under Rule 12(b)(2), the plaintiff must make a *prima facie* case of personal jurisdiction. See *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). When a court decides a motion on the basis of paper submissions, a court accepts as true the plaintiff's undisputed allegations, unless proved otherwise by defendant's affidavits or exhibits. *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003). Disputes concerning relevant facts are resolved in favor of the plaintiff. *Id.*

Under Illinois law, a court may exercise personal jurisdiction over a non-resident through operation of its long-arm statute. See 735 ILCS § 5/2-209. That statute extends personal jurisdiction over claims that arise out of a number of enumerated actions and activities, including committing a tort in Illinois. See 735 ILCS § 5/2-209(a)(1-2). In addition, the statute's "catch-all" provision authorizes courts to exercise jurisdiction on any basis permitted by the Illinois or federal Constitutions. 735 ILCS § 5/2-209(c). The Seventh Circuit has opined that "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." *Hyatt*, 302 F.3d at 715.

Due process requires that a court exercise personal jurisdiction over a non-resident defendant only if the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1940) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The "purposeful availment" requirement of the minimum contacts standard ensures that a non-resident defendant will not be forced to litigate in a jurisdiction as a result of random contacts with the forum or the unilateral activity of the plaintiff. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985).

The Supreme Court has distinguished two types of personal jurisdiction: general and specific. *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 414-416 (1984); see also *Hyatt*, 302 F.3d at 713. General jurisdiction exists where the defendant has "continuous and systematic" contacts with the forum state. *Helicopteros*, 466 U.S. at 416; *Hyatt*, 302 F.3d at 713.

If such contacts exist, "the court may exercise personal jurisdiction over the defendant even in cases that do not arise out of and are not related to the defendant's forum contacts." *Hyatt*, 302 F.3d at 713. Specific jurisdiction is more limited. *Id.* A plaintiff seeking to establish specific personal jurisdiction must show that the alleged controversy between the parties "arise[s] out of" or "relate[s] to" the defendant's forum contacts in addition to establishing that minimum contacts exist. *Id.*

Finally, even if a court finds that the minimum contacts standard and the specific jurisdiction requirement have been met, the due process inquiry does not end. The court also must consider whether the exercise of personal jurisdiction comports with "fair play and substantial justice." *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320). "Thus, courts in appropriate cases may evaluate the burden on the defendant, the forum State's interest in adjudicating the dispute, the interstate judicial system's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Id*. at 477 (internal quotation marks and citation omitted). These considerations may be used to establish the reasonableness of jurisdiction when plaintiff has not made a strong showing of minimum contacts. *Id*. (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984)).

In this case, Plaintiff contends that all of Defendants' statements regarding Plaintiff arose from Defendant's submission to the personal jurisdiction of this court in the Courtin-Cooney litigation. Plaintiff alleges that Defendant posted the online comments regarding Plaintiff to the website of a local Chicago news and entertainment publication that caters primarily to individuals in and around Chicago. Plaintiff also alleges that Defendant sent his complaint

regarding Plaintiff to the Illinois ARDC and accused Plaintiff of criminal activity in a memorandum to a district court judge in Illinois. In addition, Plaintiff claims that Defendant is an owner of Top Shelf Imports, LLC – a company whose inventory "is stored in northern Illinois." [25, at 3.] Accordingly, Plaintiff states that Defendant has sufficient contacts to establish personal jurisdiction in this case.

Defendant argues that he posted the *Reader* article comments from his home in Massachusetts, and that because the comments were posted online they were not "circulated in Chicago or anywhere else in Illinois." [34, at 5.] Defendant further states that he has never been an owner of any Illinois business.

Although it may be true that, as Defendant asserts, he posted the comments while in Massachusetts, Plaintiff correctly points out that the *Chicago Reader* is a Chicago publication that caters primarily to a Chicago audience. Thus, irrespective of whether Defendant owned in part an Illinois business, it is undisputed that Defendant's statements regarding Plaintiff – which statements form the basis of Plaintiff's complaint – were published to persons or entities based in Illinois, including the ARDC, a federal court judge presiding over the related litigation, and a Chicago-focused news and entertainment website. Defendant's acts were not made at random in Illinois; rather, Plaintiff alleges that Defendant intended his comments to be published to those individuals and entities in Illinois whom he believed could influence in some fashion. For example, Defendant exhorts readers of the *Reader* not to do business with Top Shelf Imports, asks Judge Bucklo to enter judgment in favor of Defendant and his wife, and asks that the ARDC investigate Plaintiff. By virtue of these statements alone, Defendant has purposefully availed himself of the privilege of conducting activities in Illinois. The Court thus concludes that the instant dispute arose out of and relates to Defendant's contacts in Illinois and that the exercise of

personal jurisdiction over Defendant does not offend notions of "fair play and substantial justice." See *Hyatt*, 302 F.3d at 713; *Burger King*, 471 U.S. at 476. The Court denies Defendant's motion to dismiss under Rule 12(b)(2).

## C. Process and Service of Process

Defendant next contends that the Court should dismiss Plaintiff's complaint for insufficient process and improper service of process pursuant to Rules 12(b)(4) and 12(b)(5). Defendant also argues that Plaintiff violated Rule 4(c)(1) by failing to serve and file Exhibit A of her complaint, as well as Local Rule 5.2(d) by failing to properly mark the exhibits and include a list of exhibits, and that the exhibits should be stricken accordingly. Plaintiff contends that Defendant was properly served with the complaint and all attached exhibits on August 6, 2010, and that the affidavit of service attests thereto.

On July 15, 2010, the Court granted Plaintiff an extension of time to serve Defendant until August 14, 2010. The docket reflects that summons was issued to Defendant on August 6. The Court thus concludes that Plaintiff complied with Rule 4(c)(1), and denies Defendant's motion to dismiss on 12(b)(4) and 12(b)(5) grounds. Furthermore, although Plaintiff did not comply strictly with Local Rule 5.2(c) by including a list of exhibits or providing exhibit cover pages, the Court, in exercise of its discretion, overlooks the transgression and declines to strike Plaintiff's submissions because there was no apparent prejudice to Defendant's ability to defend the lawsuit. See *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1999) (holding that a district court has discretion to disregard violations of local rules and that appellate courts will grant considerable deference to exercise of such discretion).

### D. Statute of Limitations

Defendant's fourth argument in favor of dismissal is that Plaintiff's defamation *per se* claim (Count I) is time-barred, and therefore must be dismissed under Rule 12(b)(6). Illinois has a one-year statute of limitations for defamation actions. 735 ILCS 5/13-201. The statute of limitations begins to run on the date of publication of the allegedly defamatory material or, when the date of publication is uncertain, "at the time plaintiff knew or should have known of the allegedly defamatory statement." See *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 334 N.E.2d 160, 161, 164 (Ill. 1975).

Here, Defendant made his initial comment regarding the Courtin-Cooney litigation on February 16, 2009. As noted above, the comment was published on the *Reader*'s publicly accessible website in response to an article written specifically about Plaintiff's client. Plaintiff responded to Defendant's first comment on March 10, 2009. Six days later, Defendant posted a rejoinder to Plaintiff's comment on the website, in which he identified for the first time Plaintiff by name and accused her of being involved in her client's allegedly fraudulent scheme. Plaintiff alleges that she did not discover Defendant's second comment until March 20, 2009, when a co-worker brought it to her attention. Accepting this assertion as true as the Court must for purposes of this motion, it is nonetheless conceivable that Plaintiff *should* have known of Defendant's comment on March 16, given that it was published on a publicly accessible website and Plaintiff had already entered into a "conversation" with Defendant in the comment section of the site. But even if the defamation claim accrued on March 16, not March 20, 2009, Plaintiff filed her complaint on March 16, 2010, and thus commenced this action "within one year next after the cause of action accrued." 735 ILCS 5/13-201. In sum, Plaintiff's claim is not time-barred with respect to Defendant's March 16 comment, and the Court must deny Defendant's

motion to dismiss the defamation claim on that ground. (Of course, to the extent that Plaintiff's claim rests on the February 16 comment or other statements that Defendant made prior to March 16, 2009, the claim is time-barred).

### E. Failure to State a Claim of Defamation *Per Se*

Defendant argues that Plaintiff's defamation *per se* claim should be dismissed under Rule 12(b)(6) for failure to state a claim. The elements of a defamation claim are: (1) the defendant made a false statement concerning plaintiff; (2) the defendant published the defamatory statement to a third party; and (3) the plaintiff was damaged. *Wynne v. Loyola Univ. of Chicago*, 741 N.E.2d 669, 675 (Ill. App. Ct. 1st Dist. 2000). A statement is defamatory *per se* if it involves words that impute the commission of a criminal offense, words that impute infection with a loathsome communicable disease, words that impute an inability to perform or want of integrity in the discharge of duties of office of employment, or words that prejudice a party, or impute a lack of ability, in his or her trade, profession or business. *Bryson v. News Am. Publications, Inc.*, 672 N.E.2d 1207, 1214-15 (Ill. 1996). A plaintiff does not need to plead actual damage to her reputation if she asserts a claim of defamation *per se*. *Id.* at 1214.

According to Plaintiff's complaint, Defendant falsely stated that Plaintiff helped Mr. Courtin to perpetrate an alleged crime through Plaintiff's legal representation of Mr. Courtin. Plaintiff claims that these statements imputed her involvement in the commission of a criminal offense, a want of integrity in discharging the duties of her employment, and prejudice her in her profession as a solo legal practitioner. Plaintiff alleges that Defendant published these statements to third parties through the *Reader* website, the letter to the ARDC, and an *ex parte* communication to Judge Bucklo. Plaintiff further alleges that, as a solo legal practitioner who depends on her reputation in the community to generate business, Defendant's statements –

11

which she claims are now retrievable through a simple internet search of Plaintiff's name – caused her damage.

Accepting all of Plaintiff's allegations as true for purposes of this motion, the Court concludes that Plaintiff has sufficiently pleaded a claim for defamation *per se*. The Court therefore denies Defendant's motion to the extent that it seeks to dismiss Plaintiff's defamation *per se* claim for failure to state a claim under Rule 12(b)(6).[3]

### F. Failure to State a Claim of Tortious Interference With Contractual Relations

Defendant argues that Plaintiff's claim for tortious interference with contractual relations (Count II) should be dismissed under Rule 12(b)(6) because Plaintiff's allegations "are incredulous as well as conclusory and fail to state a claim upon which relief can be granted." [17, at 6.] The elements of tortious interference with contractual relations are: (1) the existence of a valid and enforceable contract between the plaintiff and another person or entity; (2) the defendant's awareness of the contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of contract; (4) breach of the contract caused by the defendant's

---

[3] In his reply brief, Defendant suggests that his March 16 comment in the *Reader* article consisted only of opinions and thus falls outside the scope of a defamation action. The Court notes that Defendant's own comment on the *Reader* website belies his assertion that he was merely opining about Defendant's activities. For example, Defendant stated in the comment that "[w]hat Ms. Cartwright does not seem to understand is that everything I might have inferred in my previous comment is completely true, backed with solid evidence and for the most part understated. During my conversation with Kelly, I presented factual examples that showed her client had knowingly planned a get-rich-quick scam * * *." [1-2, at 5.] Defendant further states: "I resent the fact that [Plaintiff] has displayed such little regard for the truth and for the destructive effects caused by her lack of due diligence. I hope that when the honorable Judge Bucklo finally rules on this case, she will weigh in on the significantly influential role Ms. Cartwright ha splayed in manipulating and prolonging the effects of Mr. Courtin's fraudulent, malicious and destructive actions." [1-2, at 6.] Thus, far from being couched in subjective terms, Defendant's allegations impart an air of factual (and legally actionable) certainty.

wrongful conduct; and (5) damages to the plaintiff. *Philip I. Mappa Interests, Ltd. v. Kendle*, 554 N.E.2d 1008, 1011 (Ill. App. Ct. 1st Dist. 1990).

Plaintiff alleges that she had a valid contractual relationship with Mr. Courtin, her client in the Courtin-Cooney litigation. Plaintiff alleges that Defendant was aware of Plaintiff's relationship with Mr. Courtin. Plaintiff further alleges that Defendant intentionally sought to induce a breach of Plaintiff's contract with Mr. Courtin by threatening her law license if she did not settle the case. However, Plaintiff does not allege that she breached her contract with Mr. Courtin as a result of Defendant's actions. To the contrary, Plaintiff's complaint alleges that Plaintiff represented Mr. Courtin throughout the litigation until the case settled. Absent any allegation from which the Court plausibly could infer damages as a result of Defendant's conduct, Plaintiff cannot maintain a claim for tortious interference with contractual relations. The Court therefore dismisses without prejudice Count II of Plaintiff's complaint for failure to state a claim.

### G. Failure to State a Claim of Intentional Infliction of Emotional Distress

Defendant argues that Plaintiff's complaint fails to state a claim for intentional infliction of emotional distress (Count III of Plaintiff's complaint) and therefore should be dismissed under Rule 12(b)(6).[4] The three elements of intentional infliction of emotional distress are: (1) the defendant's conduct was extreme and outrageous; (2) the defendant intended his conduct to inflict severe emotional distress or knew that there was a high probability that it would do so; and (3) the defendant's conduct did in fact cause severe emotional distress. *Rekosh v. Parks*, 735 N.E.2d 765, 772 (Ill. App. Ct. 2d Dist. 2000).

---

[4] The relevant heading in this section of Defendant's motion states that he seeks to dismiss under "FRCP 11 (b) (6)." Defendant presumably seeks dismissal under Rule *12*(b)(6), as the ground for dismissal is failure to state a claim and because there is no "Rule 11(b)(6)" in the Federal Rules.

Here, Plaintiff alleges that Defendant's public allegations of criminal conduct and threats of disbarment were extreme and outrageous. Plaintiff alleges that Defendant intended his statements to cause severe emotional distress for the purpose of inducing settlement in the Courtin-Cooney litigation, and that Plaintiff did in fact suffer severe emotional distress as a result of Defendant's conduct. Plaintiff has thus provided notice of the basis for her intentional infliction of emotional distress claim. The Court denies Defendant's motion to dismiss Count III.

### H. Sanctions

Defendant moves for sanctions on two grounds. First, Defendant argues that sanctions under Rule 11(c) are warranted because he alleges that Plaintiff's complaint is frivolous, ungrounded, and was intended solely to harass Defendant.

Rule 11(b) requires an attorney to certify, to the best of her knowledge, that any pleading that the attorney presents to the court is not being presented for any improper purpose – such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation – and that the legal contentions asserted in the pleading are non-frivolous and have or are likely to have evidentiary support. FED. R. CIV. P. 11(b); see also *Jimenez v. Madison Area Tech. College*, 321 F.3d 652, 656 (7th Cir. 2003). "The central goal of Rule 11 is to deter abusive litigation practices." *Corley v. Rosewood Care Center, Inc. of Peoria*, 388 F.3d 990 (7th Cir. 2004) (internal quotation marks and citations omitted). Rule 11 thus serves to protect courts and parties against "callous disregard for governing law or the procedures of the court * * *." *Allison v. Dugan*, 951 F.2d 828, 834 (7th Cir. 1992). Under subsection (c) of the Rule, a court may impose sanctions on parties who fail violate subsection (b). FED. R. CIV. P. 11(c).

Courts have cautioned that Rule 11 should not be used as "a battleground for satellite controversies wherein, in effect, the tail would wag the dog, potentially diverting judicial resources from the prompt disposition of the merits of controversies" *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Financial Servs., Inc.*, 9 F.3d 1263, 1269 (7th Cir. 1993). To forestall such use, a court should apply Rule 11 sanctions only "with utmost care and caution." *Fed. Deposit Ins. Corp. v. Tefken Constr. and Installation Co., Inc.*, 847 F.2d 440, 444 (7th Cir. 1988). Indeed, even when a court has ruled that a party has been "wrong on the law," sanctions against that party do not flow inevitably. *Harlyn Sales*, 9 F.3d at 1270. The test is whether "competent attorneys performing a reasonable investigation could not have believed in the merit of the position taken in the complaint * * *." *Id.* at 1269. Thus, a court analyzing a Rule 11 claim must assess the subjective belief and purpose of the attorney signing the pleading as well as whether the attorney's mental state is based upon an objectively reasonable inquiry into the facts and the law. *Id.* at 1270. The court has considerable discretion in assessing the underlying case, the attorneys' behavior, and the applicable law pursuant to the Rule 11 analysis. *Id.*

Here, Plaintiff's complaint is not facially "wrong on the law;" rather, the complaint is based on a reasonable inquiry into the law on all three counts asserted. A competent attorney who performed a reasonable investigation of the facts underlying the claims could believe the merit of Plaintiff's complaint. Defendant's motion for Rule 11 sanctions on this ground is thus unfounded.

Defendant also claims that Plaintiff should be sanctioned for disclosing Defendant's allegedly defamatory statements concerning Mr. Courtin in spite of the non-disparagement agreement to which Mr. Courtin and Mr. Cooney stipulated as part of the Courtin-Cooney

15

settlement. Defendant alleges that Plaintiff violated Illinois Rule of Professional Conduct 1.9 in disclosing these statements despite the non-disparagement agreement.[5]

Plaintiff counters that she was never a party to Defendant's non-disparagement agreement with Mr. Courtin and that, even if she was, the agreement does not bar Plaintiff from disclosing Defendant's allegedly defamatory statements concerning *Plaintiff* (many of which overlap with the statements concerning Mr. Courtin) in *this* defamation action. The Court agrees. Defendant's motion for Rule 11 sanctions on this ground is denied.

## IV. Conclusion

For the reasons set forth above, Defendant's motion [17] is granted as to Count II of Plaintiff's complaint and otherwise denied. Court II is dismissed without prejudice. Plaintiff is given 21 days to replead as to Count II if she believes that she can cure the deficiencies identified above.

Dated: April 21, 2011

_____
Robert M. Dow, Jr.
United States District Judge

---

[5] Defendant points to no authority, nor is the Court aware of any authority, that states that a third party has standing to seek sanctions against an attorney for the attorney's violation of professional conduct toward her client.

16