# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KELLY CARTWRIGHT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 10-cv-1691 |
| | ) |
| DAN COONEY, | ) Judge Robert M. Dow, Jr. |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's motion for judgment on the pleadings based upon Illinois Citizen Participation Act [51] and motion to strike [53]. For the reasons below, Defendant's motions [51 & 53] are denied.

**I.  Background[1]**

    **A.  Factual Background**

A French restaurateur named Jean-Denis Courtin and a spirits specialist named Christine Cooney became business partners in Top Shelf Imports, LLC. Top Shelf Imports sought to manufacture, produce, and distribute Qino One Vodka, a vodka made from the Andean quasicereal quinoa. A business dispute between Mr. Courtin and Ms. Cooney arose in 2008, and Mr. Courtin filed a lawsuit against Christine Cooney and her husband, Daniel Cooney ("Defendant") ("the Courtin-Cooney litigation"). From August 2008, when the case was filed, until September 2009, when it settled, attorney Kelly Cartwright ("Plaintiff") represented Mr.

---

[1] For purposes of Defendant's motion to dismiss, the Court assumes as true all well-pleaded allegations that are set forth in Plaintiff's amended complaint. See, *e.g., Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

Courtin and Top Shelf Imports. Defendant and his wife were represented by various attorneys from August 2008 to March 2009, after which they litigated the case *pro se*.

On January 22, 2009, the *Chicago Reader* ("the *Reader*") published an article entitled "Seeds of Change" ("the article") about the genesis of Jean-Denis Courtin's vodka business venture. The article appeared on the *Reader*'s website, and a space in which readers could write and publish comments was provided directly below the article.

On February 16, 2009, Defendant published a comment ("the February 16 comment") to the article in which he stated that he was an owner of Qino One Vodka. Defendant wrote that he had filed claims against Courtin for fraud, breach of contract, and unjust enrichment, and described at length the allegations underlying those claims. The February 16 comment's sole (presumed) reference to Plaintiff was that Courtin "conn[ed] a young socially-conscious freelance attorney into bleeding his [Courtin's] business partner [*i.e.*, Christine Cooney] further, via endless, costly legal delays and ongoing Federal Court litigation." [1-2, at 4.]

On March 10, 2009, Plaintiff published a comment to the *Reader* article on the *Reader*'s website ("Plaintiff's March 10 comment") that responded to Defendant's February 16 comment. Plaintiff wrote that she represented Courtin, disputed the allegations in Defendant's comment, and accused Defendant of acting "with malicious intent to cause harm to Mr. Courtin's reputation and business ventures in a desperate attempt to persuade Mr. Courtin to drop his lawsuit against Cooney." [1-2, at 4.] Plaintiff's comment also stated that "Mr. Courtin has amended his federal lawsuit to address this most recent tortious conduct advanced by [Defendant]" by adding a defamation claim to Courtin-Cooney litigation. [1-2, at 4.]

On March 16, 2009, Defendant published a responsive comment ("the March 16 comment"), in which he wrote:

> I am glad to see Ms. Kelly Cartwright has decided to join the conversation After all, she has played such a major role in advancing Mr. Courtin's fraud scheme; one might even say (metaphorically?), 'they are partners in crime.' After six months of avoiding a meaningful conversation with me, my wife, our attorneys, or the court Ms. Cartwright finally returned my call last week, apparently believing she had something on us. * * * During my conversation with Kelly, I presented factual examples that showed her client had knowingly planned a get-rich-quick scam that involved selling American consumers a product that does not exist. She reacted as if she was hearing it for the first time. I am not at all sure her reaction was genuine as I find it difficult to believe anyone could be that ignorant of the facts while being such an integral part of the scam. While Ms. Cartwright claims Mr. Courtin does not have any money, it appears she has been working as his mercenary legal attack dog for over nine months. She must certainly believe there is something big waiting for her at the end of the rainbow if she can succeed in neutralizing us, the main obstacle to the scam. When I asked her if it wasn't important to know if her client was telling the truth before wasting so many people's time, her response was, 'the truth is irrelevant in this case.'

[1-2, at 5-6.] The March 16 comment then recited numerous allegations regarding Mr. Courtin before closing on a final note about Plaintiff:

> Mr. Courtin hired Kelly Cartwright to intimidate us * * *. While I respect Ms. Kelly Cartwright's freedom to practice being a lawyer, I resent the fact that she has displayed such little regard for the truth and for the destructive effects caused by her lack of due diligence. I hope that when the honorable Judge Bucklo finally rules on this case, she will weigh in on the significantly influential role Ms. Cartwright has played in manipulating and prolonging the effects of Mr. Courtin's fraudulent, malicious and destructive actions.

[1-2, at 6.][2]

In addition to the February 16 and March 16 comments, Plaintiff alleges that Defendant filed a complaint concerning Plaintiff with the Illinois Attorney Registration and Disciplinary Committee ("ARDC") in which he falsely stated that Plaintiff had engaged in criminal activity in representing Mr. Courtin. Plaintiff alleges that the ARDC complaint was dismissed without a

---

[2] The comment section of the webpage for the *Reader* article included a link entitled "Flag as inappropriate" after each posted reader comment. It does not appear from the copy of the article and comments that Plaintiff attached to her complaint that either Defendant's comments or Plaintiff's comment were ever flagged as inappropriate.

hearing. Finally, Plaintiff alleges that Defendant submitted an "*ex parte* settlement status memo" to Judge Bucklo – the presiding judge in the Courtin-Cooney litigation – in which he accused Plaintiff of making misrepresentations during settlement negotiations, stating falsehoods to the U.S. Patent and Trademark Office in seeking a patent for the quinoa vodka formulation, and representing Mr. Courtin despite having a conflict of interest.

The Courtin-Cooney litigation ultimately settled. Plaintiff filed the operative complaint in this case on March 16, 2010. Plaintiff asserted claims of defamation *per se* (Count I); tortious interference with contractual relations (Count II); and intentional infliction of emotional distress (Count III). Defendant moved to dismiss Plaintiff's complaint under Rules 12(b)(1), 12(b)(2), 12(b)(4), 12(b)(5), and 12(b)(6) and also moved for sanctions under Rule 11(c). The Court granted Defendant's motion as to Count II, but denied the motion as to Counts I and III. The Court also denied Defendant's motion for sanctions. Defendant now has moved for judgment on the pleadings based on the Illinois Citizen Participation Act ("ICPA"). See 735 ILCS 110/1 *et seq*.

### B. Motion to Strike

Several allegations in Plaintiff's complaint pertain to prior history between Cooney and Plaintiff's client, Jean Denis Courtin, including reference to the prior suit between Cooney and Courtin previously pending in this district (the "*Courtin* Litigation"). Defendant maintains that certain references in the complaint to the *Courtin* Litigation have no materiality or relevance to the issues before the Court in this case and are unduly prejudicial to Cooney through Cartwright's suggestions that Cooney has a propensity to defame based upon that prior litigation involving another party. He also objects to Plaintiff's allegation that Cooney failed to honor a

settlement agreement in the *Courtin* Litigation notwithstanding the fact that the case ultimately was settled and dismissed with prejudice on October 23, 2009.

Defendant's arguments are premature. Plaintiff's allegations are appropriate for a complaint and, at first glance, appear to be relevant to the current suit. According to Plaintiff's complaint, Defendant falsely stated that Plaintiff helped Mr. Courtin to perpetrate an alleged crime through Plaintiff's legal representation of Mr. Courtin. Plaintiff claims that these statements imputed her involvement in the commission of a criminal offense, a want of integrity in discharging the duties of her employment, and prejudice her in her profession as a solo legal practitioner. Plaintiff alleges that Defendant published these statements to third parties through the *Reader* website, the letter to the ARDC, and an *ex parte* communication to Judge Bucklo. Plaintiff further alleges that, as a solo legal practitioner who depends on her reputation in the community to generate business, Defendant's statements – which she claims are now retrievable through a simple internet search of Plaintiff's name – caused her damage. Certainly, the paragraphs referenced by Defendant provide context for the ongoing dispute between Plaintiff and Defendant. In the event that the offending allegations are not material or relevant to this litigation, Defendant will have the opportunity to demonstrate that during briefing on any dispositive motions, or may move *in limine* should this case proceed to trial. At this stage, they are not inappropriate. Defendant's motion to strike [53] is denied.

## II. Legal Standard

A Rule 12(c) motion for judgment on the pleadings permits a party to move for judgment after both the plaintiff's complaint and the defendant's answer have been filed. Fed. R. Civ. P. 12(c). Rule 12(c) motions are reviewed under the same standard as Rule 12(b)(6) motions to dismiss. *Piscotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555, 569 n.14). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 562.

In ruling on a motion for judgment on the pleadings, the Court must "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Forseth v. Village of Sussex,* 199 F.3d 363, 364 (7th Cir. 2000). "Thus to succeed, the moving party must demonstrate that there are no material issues of fact to be resolved." *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F.3d 449, 452 (7th Cir. 1998). Courts "view the facts in the complaint in the light most favorable to the nonmoving party." *Id.* (quoting *GATX Leasing Corp. v. National Union Fire Ins. Co.,* 64 F.3d 1112, 1114 (7th Cir. 1995)). "The main difference between a Rule 12(b) motion and a Rule 12(c) motion is that a Rule 12(b) motion may be filed before the answer to the complaint is filed, whereas,

a Rule 12(c) motion may be filed "after the pleadings are closed but within such time as not to delay the trial." *Id.* at 452 n.3.

A court decides a motion for judgment on the pleadings under Rule 12(c) based upon a review of the pleadings alone. *Northern Indiana Gun & Outdoor Shows, Inc.,* 163 F.3d at 452. The pleadings include the complaint, the answer, and any written instruments attached as exhibits, such as affidavits, letters, contracts, and loan documentation. *Id.* at 452-53; see also *Arethas v. S/TEC Group, Inc.*, 2005 WL 991782, at *6 (N.D. Ill. 2005) ("although in ruling on a motion for judgment on the pleadings a court can consider affidavits attached to a complaint or an answer to the complaint, a court cannot consider affidavits that are not a part of the pleadings"). If the court considers matters outside the pleadings, the court should convert the motion for judgment on the pleadings into a motion for summary judgment. *Id*. at 453 n.5; see Fed. R. Civ. Proc. 12(d).

### III. Analysis

Defendant contends that statements he made (i) to the Illinois Attorney Registration and Disciplinary Committee ("ARDC"), in which he falsely stated that Plaintiff had engaged in criminal activity in representing Mr. Courtin, and (ii) in the "*ex parte* settlement status memo" to Judge Bucklo, in which he accused Plaintiff of making misrepresentations during settlement negotiations, stating falsehoods to the U.S. Patent and Trademark Office in seeking a patent for the quinoa vodka formulation, and representing Mr. Courtin despite having a conflict of interest, are protected by the ICPA and thus immune from any legal claims by Cartwright. Defendants have not moved for judgment on the remainder of the alleged defamatory statements.

A.  The Illinois Citizen Participation Act

The ICPA, which became effective in 2007 and is commonly referred to as the anti-SLAPP (Strategic Lawsuits Against Public Participation) statute,[3] immunizes acts undertaken "in furtherance of the constitutional rights to petition, speech, association, and participation in government * * * regardless of intent or purpose, except when not genuinely aimed at procuring favorable government action, result, or outcome."  735 ILCS 110/15.  The ICPA "applies to any motion to dispose of a claim in a judicial proceeding on the grounds that the claim is based on, relates to, or is in response to any act or acts of the moving party in furtherance of the moving party's rights of petition, speech, association, or to otherwise participate in government."  *Id.*  A "claim" under the Act includes "any lawsuit, cause of action, claim, cross-claim, counterclaim, or other judicial pleading or filing alleging injury."  735 ILCS 110/10 (West 2008).  "Government" is defined as "a branch, department, agency, instrumentality, official, employee, agent, or other person acting under color of law of the United States, a state, a subdivision of a state, or another public authority including the electorate."  *Id.*; see also *Sandholm v. Kuecker*, 962 N.E.2d 418, 2012 WL 169708, at *8 (Ill. Jan. 20, 2012).

---

[3]  "SLAPPs" are "lawsuits aimed at preventing citizens from exercising their political rights or punishing those who have done so."  *Wright Development Group, LLC v. Walsh,* 939 N.E.2d 389, 395 (2010).  SLAPPs use the threat of money damages or the prospect of the cost of defending against the suits to silence citizen participation.  *Walsh,* 939 N.E.2d at 395 (citing 735 ILCS 110/5 (West 2008)).  The paradigm SLAPP suit is "one filed by developers, unhappy with public protest over a proposed development, filed against leading critics in order to silence criticism of the proposed development."  *Westfield Partners, Ltd. v. Hogan,* 740 F. Supp. 523, 525 (N.D. Ill. 1990).  According to the Illinois Supreme Court, "Plaintiffs in SLAPP suits do not intend to win but rather to chill a defendant's speech or protest activity and discourage opposition by others through delay, expense, and distraction."  *Sandholm v. Kuecker*, 962 N.E.2d 418, 2012 WL 169708, at *6 (Ill. Jan. 20, 2012).  The idea is that the SLAPP plaintiff's goals are achieved through the ancillary effects of the lawsuit itself on the defendant, not through an adjudication on the merits.

The ICPA requires a court to dismiss claims to which it applies unless the plaintiff produces "clear and convincing evidence that the acts of the moving party are not immunized from, or are not in furtherance of acts immunized from, liability by this Act." 735 ILCS 110/20(c). In his motion, Defendant argues that his statements to the ARDC and Judge Bucklo are protected by the ICPA because they were made to government officials and sought favorable governmental action by those officials. In response, Plaintiff maintains that Defendant's actions were not in furtherance of Defendant's free speech rights nor were his actions genuinely aimed at procuring favorable government action. After briefing was completed on the instant motion, the Illinois Supreme Court issued a decision addressing SLAPP lawsuits and the ICPA. *Sandholm v. Kuecker*, 962 N.E.2d 418, 2012 WL 169708 (Ill. Jan. 20, 2012). The Court gave the parties leave to file supplemental memoranda addressing the new decision, and both sides submitted additional briefs.

Defendant argued that his statements to the ARDC and Judge Bucklo are protected by an "absolute privilege." Plaintiff counters that the ICPA was not intended to "protect those who commit tortious acts and then seek refuge in the immunity conferred by the Statute." Pl.'s Supp. Mem. at 3 (citing *Sandholm*, 2012 WL 169708, at *8). In *Sandholm*, the plaintiff argued that the ICPA is intended to apply only to actions based *solely* on the defendants' petitioning activities and does not immunize defamation or other intentional torts. In other words, "if the plaintiff's intent in bringing suit is to recover damages for alleged defamation and not to stifle or chill defendants' rights of petition, speech, association, or participation in government, it is not a SLAPP and does not fall under the purview of the Act." *Sandholm*, 2012 WL 169708, at *8. The Supreme Court agreed: "Looking at the statute in its entirety, it is clear that the legislation is

9

aimed at discouraging and eliminating meritless, retaliatory SLAPPs, as they traditionally have been defined." *Id.*

The Illinois Supreme Court instructed courts assessing the ICPA's application to first determine whether the lawsuit is the type of suit that the ICPA was intended to address. See *Sandholm*, 2012 WL 169708, at *9 ("This description of a claim subject to the Act must not be construed in isolation but in the context of the purposes described in the public policy section."). To this end, the ICPA describes a SLAPP suit as one which "chills and diminishes citizen participation in government, voluntary public service, and the exercise of these important constitutional rights." 735 ILCS 110/5 (West 2008). The ICPA further identifies a SLAPP as an "abuse of the judicial process" which "can and has been used as a means of intimidating, harassing, or punishing citizens and organizations for involving themselves in public affairs." *Id.* The supreme court then pointed out that the "purpose of the Act is to give relief, including monetary relief, to citizens who have been victimized by *meritless, retaliatory* SLAPP lawsuits because of their 'act or acts' made 'in furtherance of the constitutional rights to petition, speech, association, and participation in government.'" *Id.* (emphasis added) (quoting *Walsh,* 939 N.E.2d at 395; 735 ILCS 110/15).

In light of the foregoing, the Supreme Court construed the phrase "based on, relates to, or is in response to" in § 15 to mean "*solely* based on, relating to, or in response to 'any act or acts of the moving party in furtherance of the moving party's rights of petition, speech, association, or to otherwise participate in government.'" *Sandholm,* 2012 WL 169708, at *9 (quoting 735 ILCS 110/15). "Stated another way, where a plaintiff files suit genuinely seeking relief for damages for the alleged defamation or intentionally tortious acts of defendants, the lawsuit is not solely based on defendants' rights of petition, speech, association, or participation in

10

government. In that case, the suit would not be subject to dismissal under the Act. It is clear from the express language of the Act that it was not intended to protect those who commit tortious acts and then seek refuge in the immunity conferred by the statute." *Id.* The Supreme Court also pointed out that construing the ICPA to apply only to meritless SLAPPs accords with another express goal in § 5: "to strike a balance between the rights of persons to file lawsuits for injury and the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government." 735 ILCS 110/5 (West 2008). The ICPA's intent to "strike a balance" recognizes that a solution to the problem of SLAPPs must not compromise either a defendant's constitutional right of free speech and petition, or a plaintiff's constitutional right of access to the courts to seek a remedy for damage to reputation. See *Sandholm*, 2012 WL 169708, at *11. The court concluded that the legislature did not intend to establish "a new absolute or qualified privilege for defamation." *Id.*

Particularly helpful in this case is the Supreme Court's reasoning with respect to the "sham exception" portion of § 15. 735 ILCS 110/15 ("Acts in furtherance of constitutional rights to petition, speech, association, and participation in government are immune from liability, regardless of intent or purpose, except when not genuinely aimed at procuring favorable government action, result, or outcome."). The court noted that

> [i]t is entirely possible that defendants could spread malicious lies about an individual while in the course of genuinely petitioning the government for a favorable result. For instance, in the case at bar, plaintiff alleges that defendants defamed him by making statements that plaintiff abused children, did not get along with colleagues, and performed poorly at his job. Assuming these statements constitute actionable defamation, it does not follow that defendants were not *genuinely* attempting to achieve a favorable governmental result by pressuring the school board into firing the plaintiff. If a plaintiff's complaint genuinely seeks redress for damages from defamation or other intentional torts and, thus, does not constitute a SLAPP, it is irrelevant whether the defendants' actions were 'genuinely aimed at procuring favorable government action, result,

11

or outcome.' Thus, plaintiff's suit would not be subject to dismissal under the Act.

2012 WL 2012 WL 169708, at *12 (emphasis in original). Based on the Supreme Court's reasoning, even if Defendant was attempting to procure a favorable result with the ARDC or Judge Bucklo, as long as Plaintiff's objective in bringing suit was not to stifle Defendant's political expression but sought redress for damages incurred by Defendant's alleged defamation or intentional infliction of emotional distress, the ICPA does not protect Defendant's speech.

Prior to the Illinois Supreme Court's decision in *Sandholm*, this case presented a close and interesting question. See *Sandholm v. Kuecker,* 942 N.E.2d 544, 568-69 (Ill. App. Ct. 2d Dist. 2010) (instructing courts to "first consider whether objective persons could have reasonably expected to procure a favorable government outcome" by way of the allegedly immunized act, and if so, the "the court need not consider the subjective intent" of the actor; by contrast, "if the answer [to the first question] is no, then the court would consider whether [the actor's] subjective intent was not to achieve a government outcome that may interfere with plaintiff but rather to interfere with plaintiff by using the governmental process itself."). However, based on the unequivocal language in *Sandholm*, it is clear that Defendant cannot seek shelter under the IPCA. A review of Plaintiff's complaint makes clear that Plaintiff's lawsuit was not solely based on, related to, or in response to the acts of Defendant in furtherance of the rights of petition and speech. Plaintiff's suit lacks the hallmarks of a SLAPP lawsuit intended to chill participation in government or to stifle political expression. *Cf. Westfield Partners, Ltd. v. Hogan*, 740 F. Supp. 523, 525 (N.D. Ill. 1990) (landowners who petitioned to have thoroughfare vacated as a road were entitled to absolute privilege in lawsuit brought by real estate developer); *Satkar Hospitality Inc. v. Cook County Bd. of Review*, 2011 WL 4431029, at *8 (N.D. Ill. Sept. 21, 2011). Instead, it is readily apparent that Plaintiff's objective in filing suit was not to interfere

with and burden Defendant's free speech and petition rights, but to seek damages for the personal harm to her reputation from Defendant's alleged defamatory and tortious acts. Plaintiff alleges that Defendant threatened her in an e-mail that he would submit a complaint to the ARDC if she did not settle the case against his wife. Furthermore, the allegedly "judicial" statements to Judge Bucklo were not made during an oral argument or in a brief; rather, Defendant sent an *ex parte* letter to the judge in which he accused Plaintiff of serious ethical and legal violations. Furthermore, as pointed out by Plaintiff in her supplemental memorandum, the central allegations in her complaint are based on statements posted on the Chicago Reader website, which claim that Plaintiff, an attorney, is a criminal and a fraud. When the statements to the ARDC and Judge Bucklo are viewed in the context of the dealings between the parties—specifically, given that the statements *followed* Defendant's statements published in the Chicago Reader in March 2009, which clearly were not aimed at procuring favorable government action and are not the subject of the current motion—Defendant's argument that the statements were genuinely aimed at procuring favorable government action falls flat. See also *Trudeau v. ConsumerAffairs.com, Inc.*, 2011 WL 3898041, at *6 (N.D. Ill. Sept. 6, 2011).

Defendant has not met his burden of showing that Plaintiff's suit was based solely on Defendant's petitioning activities; rather, it is clear that Plaintiff seeks to remedy the damage caused to her reputation by Defendant's allegedly defamatory statements on the internet. The Court expresses no opinion on the actual merits of Plaintiff's case. Defendant's motion for judgment on the pleadings was explicitly based upon the ICPA, and he has failed to demonstrate that Plaintiff brought suit to chill his participation in government or stifle his political expression. There may be other privileges that apply or discovery may reveal additional facts that cast doubt

on Plaintiff's assertions. But for present purposes, the Court concludes that Plaintiff's lawsuit is not a SLAPP within the meaning of the Act and, thus, is not subject to dismissal on that basis.

**IV.     Conclusion**

For the reasons set forth above, Defendant's motion for judgment on the pleadings based upon Illinois Citizen Participation Act [51] and motion to strike [53] are denied.

Dated: March 26, 2012                     _____
                                           Robert M. Dow, Jr.
                                           United States District Judge